**Lt. Col. George C. BELL, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**No. 92–790C.**

United States Court of Federal Claims.

Oct. 31, 1994.

David P. Strolle, Jr., San Antonio, TX, for plaintiff.

Hillary A. Stern, Civ. Div., U.S. Dept. of Justice, Washington, DC, with whom were Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director, and James M. Kinsella, Asst. Director, for defendant.

## OPINION

MARGOLIS, Judge.

This military pay case is before the court on cross-motions for summary judgment. Plaintiff challenges a decision of the Air Force Board for Correction of Military Records ("AFBCMR" or "Board") finding that he suffered bipolar disorder, also known as manic depression, at the time of his release from active duty; converting his discharge to an involuntary separation; and awarding him a 30% disability retirement rating. Plaintiff asserts the decision is arbitrary and capricious because none of the Board's members was a qualified medical officer as required by 10 U.S.C. § 1554, the Board denied plaintiff's request for a hearing, and the Board rejected evidence indicating plaintiff was completely disabled at the time of his discharge. Plaintiff also argues the AFBCMR acted arbitrarily by failing to correct his records and reinstate him with a promotion, given its finding that he suffered bipolar disorder during active duty. Defendant maintains that 10 U.S.C. § 1554 does not apply to this case and that the administrative record establishes that the AFBCMR acted appropriately. After carefully reviewing the record and after hearing oral argument, the court grants defendant's motion for summary judgment.

## FACTS

The parties do not dispute any material facts. Plaintiff, Lt. Col. George C. Bell ("Bell"), served as an anesthesiologist with the United States Air Force ("Air Force") for more than ten years. Bell entered extended active duty in the Air Force on October 10, 1972. Three years later, he transferred to the Air Force Reserve. On June 4, 1979, Bell returned to extended active duty as a major. Bell was assigned to the Homestead Air Force Base, Florida, as Chairman of the Department of Surgery's Anesthesia Service. On December 31, 1982, the Air Force transferred Bell to Wilford Hall USAF Medical Center ("Wilford Hall"), Texas, where he served as a senior staff anesthesiologist. In July 1983, he was reassigned to Davis–Monthan Air Force Base, Arizona. Bell returned to Wilford Hall in June 1984 as Director of the Department of Anesthesiology's Clinical Investigation Function. Bell's contract with the Air Force expired on September 30, 1986. Defendant, acting through the Air Force, denied Bell's request for an extension and released him from active duty, stating: "Lt. Col Bell's noncompetitive OER [officer's effectiveness report] history and recommendation for disapproval from Wilford Hall, HQ AFSC, and the anesthesia consultant are the rationale for disapproving this request." Administrative Record ("A.R.") at 9. Defendant never promoted Bell to colonel before his discharge. The University of Texas Health Science Center at San Antonio, Texas, hired Bell on October 28, 1986 as a Clinical Associate Professor, without tenure, Department of Anesthesiology, at a compensation of $87,500, for 70.0% time, for the period of November 1, 1986 through August 31, 1987.

On October 4, 1989, plaintiff sought review of his discharge before the Air Force Board for Correction of Military Records ("AFBCMR" or "Board"). Bell claimed that, "[f]ollowing his release from active duty in March 1987, he was diagnosed as having Bipolar Disease, a disease which was either caused or aggravated by his military service and which first manifested itself while Lt. Col. Bell was a member of the active duty USAF." A.R. at 5. Bell asserted that his disorder adversely affected his Officer Effec-

tiveness Reports ("OER"), resulting in his failure to be promoted and release from active duty. According to Bell, his supervisors attributed certain behavior to a "personality problem" and downgraded his OERs because the Air Force failed to diagnose his disorder. Bell urged the Board to grant several forms of relief, including reinstating him to active duty with back pay, convening a Medical Evaluation Board ("MEB") and Physical Evaluation Board ("PEB") to review his claim for disability retirement pay, deleting certain information from his OERs, and promoting him to colonel.

Bell submitted extensive evidence with his AFBCMR application: a two volume chronology of events keyed to 136 tabbed exhibits; 36 tabbed exhibits relating to his bipolar disorder; the government's presentation before a credentials subcommittee hearing with 15 tabbed attachments; and an official letter approving the findings of that subcommittee. The AFBCMR reviewed Bell's presentation and sought advisory opinions from Maj. Glen H. Havens, Chairman of the Department of Psychiatry, Wilford Hall; Col. Donald H. Ankov, Chief, BCMR Section, Medical Standards Division, Directorate of Medical Service Officer Programs and Utilization, Randolph Air Force Base ("Randolph AFB"), Texas; Lt. Col. Luther A. Whitney, Special Assistant to the Secretary of the Air Force Personnel Council, Randolph AFB; Col. Richard J. Vogt, Chief, Promotion Division, Directorate of Personnel Program Management, Randolph AFB; and Lt. Col. David E. Edwards, Chief, Separations Branch, Directorate of Personnel Program Management, Randolph AFB. Maj. Havens found that:

The Air Force conducted a thorough and appropriate evaluation of Lt Col Bell. Documents reflecting the appropriateness of a diagnosis of personality disorders are numerous and sufficient. There is insufficient information to document the presence of any psychiatric disorder other than that of his personality disorder while he was on active duty. The subsequent bipolar presentation/diagnosis emerged after his discharge.

A.R. at 58. On October 1, 1991, the AFBCMR forwarded copies of these advisory opinions, all of which were consistent, to plaintiff for comment. Bell responded on October 23, 1991 with an amendment to his application specifically addressing the credibility and substance of the advisory opinions. Bell submitted ten exhibits with the amendment, including five medical reviews of the advisory opinions and his condition, two articles on mental illness, and findings by the Department of Veterans Affairs regarding his entitlement to disability pay.

Plaintiff submitted a second amendment to his application on December 12, 1991. Bell asserted in the second amendment that he had two diseases during his service with the Air Force, Decompression Sickness ("DCS") and bipolar disorder. He claimed the two illnesses were linked in that DCS caused his latent bipolar disorder to manifest itself and the bipolar disorder made him more susceptible to DCS. Bell filed twelve more exhibits with the second amendment, including medical records, eight articles, and a prior application to correct his military records.

On June 5, 1992, the AFBCMR received the following advisory opinion from Col. M. Richard Fragala, Consultant for Psychiatry, Office of the Surgeon General:

I have reviewed the records and accompanying documents in the case of George C. Bell. . . . It is my opinion that Dr. Bell suffered from Bipolar Disorder while on active duty in the Air Force in 1986, and that he should have been found medically unfit for worldwide duty.

In addition, I do feel that the Axis II diagnosis of Paranoid Personality Disorder was most likely not a separate entity but rather that referential symptomatology was an accompanying feature of the Bipolar Disorder.

A.R. at 400.

On July 13, 1992, the AFBCMR recommended approving Bell's application, in part. Specifically, the AFBCMR concluded:

3. Sufficient relevant evidence has been presented to demonstrate the existence of probable error or injustice concerning applicant's medical diagnosis at the time of his release from active duty. Based upon the evidence we have reviewed, we were persuaded that applicant did have the medical condition of bipolar disorder at the time of his release from active duty. Not being medical experts we requested an additional review of the applicant's medical record and the numerous medical statements provided by the Office of the Surgeon General's Consultant for Psychiatry (Exhibit J) who confirmed that the applicant suffered from Bipolar Disorder while on active duty in the Air Force in 1986, and that he should have been found medically unfit for worldwide duty. In view of the above, the remaining question is the degree of disability awarded at separation. Inasmuch as the Department of Veterans Affairs in March 1990 awarded applicant a 30% disability rating, we recommend he be placed on the Permanent Disability Retired List with a diagnosis of bipolar disorder with a rating of 30%.

A.R. at 14–15. The AFBCMR expressly recommended denying Bell's other requests for relief, stating:

4. Insufficient relevant evidence has been presented to demonstrate the existence of probable error or injustice in regard to the request to remove applicant's OERs commencing with the June 1984 report and promotion to the grade of colonel. Inasmuch as we have accepted the premise that the personality disorder was an accompanying feature of the bipolar disorder, it appears the ratings and comments on the contested OERs are an accurate representation of his performance. In addition, he received fair and equitable consideration for promotion to the grade of colonel. Accordingly, we find no basis to grant this portion of applicant's request.

5. The remainder of the requests for return to active duty and convening of an MEB/PEB, are considered moot issues in view of the corrective active [sic] recommended.

A.R. at 15. Finally, the AFBCMR considered and rejected Bell's request for a hearing because the case was "adequately documented." Defendant formally adopted the AFBCMR's recommendations, directed their

implementation, and notified Bell on July 14, 1992. This lawsuit followed.

## DISCUSSION

 The Court of Federal Claims will not reverse an AFBCMR's decision granting retirement disability pay at a particular rating unless it is "arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes and regulations." *Heisig v. United States,* 719 F.2d 1153, 1156 (Fed.Cir.1983) (quoting *deCicco v. United States,* 230 Ct.Cl. 224, 677 F.2d 66, 70 (1982)). The court exercises significant deference in these military pay cases for strong prudential and policy reasons. As the Federal Circuit noted, "[i]t is equally settled that responsibility for determining who is fit or unfit to serve in the armed services is not a judicial province." *Id.* at 1156 (citing cases). Moreover,

> it cannot be forgotten that Congress entrusted primary responsibility for the record-correction function to the service Secretaries acting through correction boards. Thus, while [the Court of Federal Claims] may disagree with a correction board about whether or not a specific situation was unjust, [it] will not substitute [its] judgment for the board's when reasonable minds could reach differing conclusions.

*Bosch v. United States,* 27 Fed.Cl. 250, 264 (1992) (quoting *Sanders v. United States,* 219 Ct.Cl. 285, 302, 594 F.2d 804, 813–14 (1979)).

 Plaintiff argues the Board's decision is arbitrary and capricious because none of its members was a qualified medical officer as required by 10 U.S.C. § 1554. This argument is without merit because that statute does not apply to this case. Section 1554 provides, in pertinent part,

> (a) The Secretary concerned shall from time to time establish boards of review, each consisting of five commissioned officers, two of whom shall be selected from ... Air Force officers designated as medical officers, ... to review, upon the request of an officer retired or released from active duty without pay for physical disability, *the findings and decisions of the retiring board, board of medical survey, or disposition board in his case....*

> (b) A board established under this section has the same powers as *the board whose findings and decision are being reviewed....*

10 U.S.C. § 1554(a), (b) (emphasis added). This statute cannot apply here because plaintiff's claims were never reviewed by a retiring board, board of medical survey or disposition board before the AFBCMR's action. Nevertheless, plaintiff urges the court to apply the requirements of section 1554 to this case because the Air Force should have recognized Bell's illness and referred him to a Medical Examination Board or Physical Examination Board before releasing him. However,

> [i]n the absence of any readily diagnosable physical condition, the [Air Force] cannot be held at fault for not referring plaintiff to a medical board, particularly where plaintiff did not voice any complaints at the time.

> Where a claimant ... does not know that he is ill or does not appreciate the serious character of his disability until after he has been separated from the military, application to the correction board becomes the mandatory administrative remedy.

*Dzialo v. United States,* 230 Ct.Cl. 506, 511, 677 F.2d 873, 875–76 (1982) (citing *Friedman v. United States,* 159 Ct.Cl. 1, 19, 24, 35, 310 F.2d 381, 392, 396, 402 (1962), *cert. denied sub nom. Lipp v. United States,* 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691 (1963)).

 A careful review of the relevant statute and regulations confirms that the AFBCMR acted appropriately in this case. The AFBCMR is established pursuant to 10 U.S.C. § 1552. That statute expressly authorizes the Board to review claims such as Bell's. Under section 1552, "[t]he Secretary of a military department, ... acting through boards of civilians of the executive part of that military department, may correct any military record of that department when he considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a); *see also* 32 C.F.R. § 865.3 ("The function of the Board is to consider all applications properly before it to determine the existence of

an error or an injustice and, when appropriate, to make recommendations to the Secretary of the Air Force."). Moreover, the composition of the Board that reviewed Bell's case was lawful. *See* 32 C.F.R. § 865.2 ("The Board consists of civilians of the executive part of the Department of the Air Force in such number, not less than three, as may be appointed by the Secretary of the Air Force."). Finally, plaintiff's argument that the court should reverse the Board's decision because, without any qualified medical officers, it could not fairly evaluate his disability rating, is particularly hollow. Not only did the Board seek and consider recommendations from various medical consultants, but the implementing regulations specifically empower it to grant every form of relief sought by plaintiff, including "[p]lacement in a temporary or permanent disability retired status, [with] appropriate percentage of disability." 32 C.F.R. § 865.18(e)(1)(iii)(F); *see also* 32 C.F.R. § 865.18(e)(1)(iii)(B), (AA), (II) (authorizing the AFBCMR to make retroactive promotions, correct OERs, and delete unfavorable information in official records).

■ Plaintiff maintains the Board's decision should also be reversed because it denied his request for a hearing. The AFBCMR's decision to grant a hearing is within its sound discretion and will be upheld if reasonable. *Lyons v. United States*, 18 Cl.Ct. 723, 729 (1989), *aff'd without op.*, 907 F.2d 157 (Fed.Cir.1990). As a matter of law, the Board's decision to proceed without a hearing was reasonable. The record before the AFBCMR in this case was extensive. Bell submitted a thorough application with numerous attachments. The AFBCMR sought advisory opinions from medical experts within the Air Force and allowed Bell to respond directly to those opinions. Under these facts, the court cannot find that the AFBCMR acted arbitrarily or capriciously when it concluded the case was adequately documented and denied plaintiff a hearing.

■ Plaintiff next argues the AFBCMR acted arbitrarily and capriciously because it found that he suffered bipolar disorder but did not alter his OERs and reinstate him with a promotion. Bell bases this argument on Air Force Regulations 36–10 and 31–11,

the advisory opinion offered by Col. Vogt, and *Sanders v. United States*, 219 Ct.Cl. 285, 594 F.2d 804 (1979). Plaintiff's reliance on any of these is misplaced. First, plaintiff failed to identify specific language within either Air Force regulation which prohibits a rater from downgrading an OER because an unknown illness affects the officer's performance. Second, Col. Vogt's letter does not support Bell's argument because it does not conclude that the Air Force had to alter his OERs if it found he was disabled at the time of his release. Rather, Col. Vogt merely expressed acquiescence in a Board decision that such action was appropriate. As Col. Vogt stated in his review:

> Based on the conclusion in the [Wilford Hall] advisory included in the case, we recommend denial. However, if the [AF]BCMR finds in favor of the applicant, we would not object to voiding the OERs determined to be adversely affected by his medical condition. In that event, promotion reconsideration would be appropriate.

A.R. at 63. Third, *Sanders v. United States* is distinguishable. In that case, the AFBCMR specifically found that some of the plaintiff's OERs were unjust and prejudicial and recommended their deletion. 219 Ct.Cl. at 292–93, 594 F.2d at 808. The AFBCMR did not, however, consider the plaintiff's request for reinstatement and a promotion. *Id.* The Court of Claims found the AFBCMR acted arbitrarily because it gave the plaintiff only " 'half-a-loaf' of relief." 219 Ct.Cl. at 301, 594 F.2d at 813 (citing *DeBow v. United States*, 193 Ct.Cl. 499, 434 F.2d 1333 (1970)). As that court held:

> Regulations prescribe that OERs are to be objective and prepared in a certain way. If a particular officer's OER has not been so prepared and that defect could have resulted in his nonselection for promotion followed by discharge, this is legal and factual error and an injustice to the officer as well. If he is not made whole by correction of his record, we can and will protect the citizen-soldier's legal rights if he is claiming lost pay and reinstatement.

219 Ct.Cl. at 303, 594 F.2d at 814. In contrast to *Sanders*, the AFBCMR in this case

determined that Bell's OERs were an accurate representation of his performance.

██ Bell also argues the AFBCMR's acted arbitrarily and capriciously by awarding him a 30% disability rating, given the extensive evidence indicating he was completely disabled. This argument must fail because the Court of Federal Claims "will not substitute its judgment for that of the [AF]BCMR where there is conflicting evidence surrounding an issue." *Kirwin v. United States*, 23 Cl.Ct. 497, 505 (1991). The record is replete with evidence that Bell was only 30% disabled at the time of his discharge. For example, within one month of his separation, Bell secured a clinical teaching position with the University of Texas Health Science Center in San Antonio. Further, several of his colleagues reported that he was an extremely capable anesthesiologist during the first half of 1986. *See, e.g.*, A.R. at 973 (recommendation letter from Col. John H. Cissik, Deputy Director, Clinical Investigations, Wilford Hall, noting: "LTC Bell distinguished himself during his six months period at this Directorate, functioning with foresight, originality, and distinct competence."). Finally, the administrative record contains the finding of the Department of Veterans Affairs that Bell was only 30% disabled from bipolar disorder. *Cf. Hutter v. United States*, 170 Ct.Cl. 517, 522, 345 F.2d 828, 831 (1965).

## CONCLUSION

For the foregoing reasons, the court grants defendant's cross-motion for summary judgment and denies the plaintiff's motion for summary judgment. The administrative record establishes that the AFBCMR's decision granting plaintiff a 30% disability rating and denying reinstatement with a promotion, was not arbitrary and capricious. The Clerk will enter judgment for defendant accordingly. No costs.